McINTIRE et al. v. WM. PENN BROAD-
CASTING CO. OF PHILADELPHIA.

No. 8928.

Circuit Court of Appeals, Third Circuit.

Argued July 26, 1945.

Decided Oct. 12, 1945.

William S. Bennet, of New York City (Roy Martin Boyd, of Philadelphia, Pa., Weidner Titzck, of Camden, N. J., and Bennet, House & Couts, of New York City, on the brief), for appellants.

Thomas B. K. Ringe, of Philadelphia, Pa. (James B. C. Howe and W. Theodore Pierson, both of Washington, D. C., A. Allen Woodruff, of Philadelphia, Pa., Pierson & Ball, of Washington, D. C., and Morgan, Lewis & Bockius, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, WALLER, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiffs are clergymen or religious corporations who have been broadcasting religious programs over Radio Station "WPEN" owned and operated by the defendant. The station operates under a short term license in the usual form [1] issued by the Federal Communications Commission under the Communications Act of 1934. See 47 U.S.C.A. § 307. WPEN devoted at least a fifth of its available broadcasting time to religious programs. All of the time consumed by these plaintiffs' programs was paid for by the plaintiffs as sponsors pursuant to contracts entered into by them and the defendant. The dates at which the contracts of the plaintiffs would have expired except for the happening of the events hereinafter referred to are listed below.[2]

Each contract contained a provision which authorized termination by the defendant by giving two weeks' notice in writing. On February 20, 1945, the defendant served on each of the plaintiffs a written notice of intention to terminate the contracts in accordance with this provision. Though the expiration dates specified in the notices in every instance fell prior to Easter Sunday 1945 (April 1), the defendant offered to permit each plaintiff to continue broadcasting over WPEN up to and including April 1, 1945. All of the plaintiffs continued their broadcasts through that day. Thereafter the defendant refused to permit any of the plaintiffs to broadcast their programs.

As will be observed from the dates set out in note 2 supra the contract of Young Peoples Church of the Air expired by its

---

[1] The license of Station WPEN provides in part:

"The licensee shall, during the term of this license, render such broadcasting service as will serve public interest, convenience, or necessity to the full extent of the privileges herein conferred.

"This license shall not vest in the licensee any right to operate the station nor any right in the use of the frequency designated in the license. beyond the term hereof, nor in any other manner than authorized herein."

[2] Specified

| Expiration Date | Name of Plaintiff | Date of Contract |
|---|---|---|
| April 1, 1945 | Young Peoples Church of the Air, Inc. | May 3, 1944 |
| May 26, 1945 | E. Schuyler English (The Pilgrims) | May 2, 1944 |
| May 27, 1945 | Carl McIntire | May 18, 1944 |
| June 17, 1945 | Wesleyan Methodist Church | May 8, 1944 |
| June 23, 1945 | Word of Life Fellowship, Inc. | May 8, 1944 |
| June 30, 1945 | Wiley Mission, Inc. | June 12, 1944 |
| July 22, 1945 | Wiley Mission, Inc. | June 12, 1944 |
| Sept. 23, 1945 | Highway Mission Tabernacle | Aug. 28, 1944 |
| Nov. 11, 1945 | Theodore Elsner (Phila. Gospel Tabernacle) | Oct. 28, 1944 |

own terms on April 1, 1945. All other contracts, save one, would have reached their original expiration dates by September 23, 1945. The remaining contract would have expired on November 11, 1945. The defendant stated its reason for cancelling the contracts as follows: "Instead of time for religious broadcasts being sold on a commercial basis as has heretofore been done, we plan to inaugurate on a substantial basis, as a public service a series of religious broadcasts of general interest, the time for which will not be sold." [3]

The original complaint filed by the plaintiffs asserted that jurisdiction lay in the District Court under Section 406 of the Communications Act of 1934, 47 U.S.C.A. § 406. Upon it becoming apparent that the defendant was not a "common carrier" as defined in Section 4(h),[4] 47 U.S.C.A. § 153 (h), the plaintiffs amended the bill of complaint and bottomed their cause on four sets of allegations. These may be stated as follows: (1) that the defendant in terminating the contracts and in refusing the plaintiffs the right to bid for radio time on a competitive basis, while entering into paid contracts with a few other religious broadcasters possessed the intent "* * * to discriminate illegally against the plaintiffs"; (2) that the notices of cancellations were of no legal effect in that the avowed reason for giving them was "illegal, invalid, and contrary to the terms and intent of the Federal Communications Act and to the First Amendment"; (3) that the policy of the defendant to give free time for religious broadcasts or "to give some free time and sell other time for religious broadcasts is illegal * * *" is contrary to the Federal Communications Act and to the First Amendment; that the course pursued by the defendant permits it to control the type of religious broadcasts to be sent out over WPEN and constitutes a violation of the right of freedom of speech and the right to the free exercise of religion; and (4) that the clause of the contracts

permitting cancellation, "printed on the reverse side of * * * [the] contracts", is without consideration, is too indefinite to be enforceable and is so repugnant to the other terms of the contracts as to be void. We will endeavor to deal with these issues but it is desirable first to make a few general observations respecting the background against which radio broadcasting stations licensed by the Federal Communications Commission operate.

■ It is plain, as indeed both the plaintiffs and the defendant agree, that a radio broadcasting station must operate in the public interest and must be deemed to be a "trustee" for the public. It is unnecessary to review in this opinion the history of the various federal statutes culminating in the Federal Communications Act which will demonstrate the correctness of the foregoing statement,[5] in view of the opinions of Mr. Justice Frankfurter in National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344, and Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656. It is clear from history and the interpretation of the Federal Communications Act that the choice of programs rests with the broadcasting stations licensed by the FCC. See also 1 Socolow, Law of Radio Broadcasting, Secs. 214–219, pp. 232–239. Censorship by the FCC is prohibited by Section 326 [6] of the Act, 47 U.S.C.A. § 326.

■ The authority of the Commission as defined in Section 303, 47 U.S.C.A. § 303 includes the power to pass upon such allegations of unfair treatment as the plaintiffs make here respecting the defendant. The Commission may refuse to renew the defendant's license if it has failed to act in the public interest. Indeed certain of the plaintiffs have complained to the Commission of the defendant's actions which are the basis for the suit at bar, but the Commission was of the opinion that the de-

---

[3] Quoted from the notices of cancellation dated February 20, 1945.

[4] In pertinent part as follows: "* * * a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier."

[5] See The Wireless Ship Act, 46 U.S.C.A. §§ 484–487, The Radio Act of 1912, 47 U.S.C.A. §§ 51–63, repealed, The Radio Act of 1927, 47 U.S.C.A. §§ 81–119, repealed.

[6] In pertinent part as follows:
"Nothing in this chapter shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication."

fendant's action in cancelling the contracts was not against the public interest.[7] In the case at bar, however, we are concerned only with the question of whether the plaintiffs have stated any cause of action against the defendant cognizable in a district court of the United States. We are of the opinion that they have not done so for the reasons stated immediately hereinafter.

■■ The causes of action which the plaintiffs seek to assert and which we have set out above, with the exception of the group of allegations which we have designated as (4), endeavor to assert violations of the Constitution or of laws of the United States. The group of allegations which we have designated as (1) seems to attempt to assert a violation of the anti-trust laws of the United States despite the fact that neither the Sherman Act[8] nor the Clayton Act[9] is mentioned in the plaintiffs' pleading. This is not in itself of great importance but the allegations of the amended complaint are insufficient to state any cause of action under the anti-trust laws. For example, it is not alleged that the defendant is in a dominant position in the broadcasting field or that it is a member of a chain which so monopolizes radio broadcasting as to render it impossible for the plaintiffs to find other outlets for their broadcasts. Neither conspiracy nor concert of action is asserted. As we stated in William Goldman Theatres, Inc., v. Loew's Inc., 3 Cir., 150 F.2d 738, paraphrasing a statement in United States v. Socony-Vacuum Oil Co., 7 Cir., 105 F.2d 809, 825, "The purpose of the anti-trust laws—an intendment to secure equality of opportunity—is thwarted if group power is utilized to eliminate a competitor who is equipped to compete." The plaintiffs do not allege that the defendant seeks to eliminate a competitor by refusing to sell radio time to the plaintiffs. It is not asserted that the defendant entered into a conspir-

acy with the plaintiffs' competitors in religious broadcasting to eliminate the plaintiffs from the religious broadcasting field. Indeed, in justice to the plaintiffs it should be stated that they do not assert expressly that they are competitors in a field of religious broadcasting or that religious broadcasting is a commodity. Properly they have avoided such allegations but the plaintiffs have stated no cause of action under the anti-trust laws of the United States.

These allegations may conceivably be construed as relating to some vague charge of unfair competition. But the plaintiffs do not assert that they are selling a commodity. The allegations seem to charge an "illegal discrimination" in that the defendant insists on preferring other religious broadcasters to the plaintiffs. But there is no reason, the FCC permitting and no violation of the anti-trust laws being involved, why the defendant may not sell time to whomever it pleases. As we have stated, Congress has confided the selection of program material to be broadcast to the taste and discrimination of the broadcasting stations.

■■ As to the groups of allegations which we have designated as (2) and (3) we conclude that they state no cause of action. The plaintiffs have cited no specific provision of the Federal Communications Act which has been violated by the defendant and we can find none. In any event the enforcement of the Act rests in the FCC and not in the district courts of the United States save for a right of review of the Commissioner's orders afforded under Section 402(a). Nor do we perceive how it may be said that because the defendant has cancelled broadcasting contracts in accordance with a written provision contained in them that the plaintiffs' rights to freedom of speech and to the free exercise of religion have been abridged. True, if a man is to speak or preach he

---

[7] The Commission by its News Release dated April 24, 1945 stated in part: "The Commission has carefully considered the matters alleged in your complaint and the representations made to it by the licensee of Station WPEN to determine whether there has been a violation of the licensee's obligation to operate in the public interest. The Commission is of the opinion that the representations of Station WPEN are consonant with the licensee's obligation to present a diversified and well-rounded

program service. For the foregoing reasons, the Commission has today denied your petition."

An appeal lay from the order of the Commission under Section 402(a) of the Federal Communications Act, 47 U.S. C.A. § 402(a). See the Urgent Deficiencies Act, 28 U.S.C.A. § 47. None of the plaintiffs availed themselves of the right of review thus afforded.

[8] See 15 U.S.C.A. §§ 1 and 2.

[9] See 15 U.S.C.A. § 13.

must have some place from which to do it. This does not mean, however, that he may seize a particular radio station for his forum. See the apt language of Mr. Justice Frankfurter in National Broadcasting Co. v. United States, supra, 319 U.S. 190, 63 S.Ct. at page 1014, 87 L.Ed. 1344, "Unlike other modes of expression radio inherently is not available to all."

■ Assuming arguendo that the defendant's cancellations of the plaintiffs' contracts have limited plaintiffs' opportunities to speak or preach freely, the First Amendment was intended to operate as a limitation to the actions of Congress and of the federal government. The defendant is not an instrumentality of the federal government but a privately owned corporation. The plaintiffs seek to endow WPEN with the quality of an agency of the federal government and endeavor to employ a kind of "trustee-of-public-interest" doctrine to that end. But Congress has not made WPEN an agency of government. For this court to adopt the view that it has such a status would be judicial legislation of the most obvious kind.

■ Finally, on this particular aspect of the case at bar, we state that we know of no federal statute which gives a cause of action against a private person who has abridged another's right to freedom of speech or to the free exercise of religion. Cf. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, and Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240.

■ The assertion that the actions of the defendant constitute censorship has in essence been discussed in the foregoing paragraphs. For a radio station to refuse to sell time in which an individual may broadcast his views may be censorship but we know of no law which prohibits such a course. As we have indicated a radio broadcasting station is not a public utility in the sense that it must permit broadcasting by whoever comes to its microphones. Cf. Pulitzer Publishing Co. v. Federal Communications Commission, 68 App.D.C. 124, 94 F.2d 249.

■ As to the group of allegations which we have designated as (4) containing the specific assertions that the defendant could not cancel the contracts because the cancellation clause was without consideration and invalid because indefinite and repugnant to other provisions of the contracts we conclude that here also the plaintiffs have failed to state a cause of action. Since this portion of the complaint is based strictly on diversity jurisdiction, the questions of law must be determined by the law of Pennsylvania [10] for it must be presumed in view of the absence of allegations to the contrary [11] that the contracts were executed and delivered in Pennsylvania.[12] Such cancellation provisions are supported by the law of Pennsylvania. See Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L.R.A. 227, 90 Am.St.Rep. 627 and Dick v. Ireland, 130 Pa. 299, 317, 18 A. 735, 736. Cancellation provisions are not uncommon in radio broadcasting contracts. See the comments of the FCC in In re Kindig, 3 F.C.C. 313. There was consideration supporting the clauses; indeed, it was the identical consideration which supported the contracts. The plaintiffs entered into the agreements fully aware that cancellation was provided for. The validity of the unilateral option reserved to the defendant is too clear to require extended discussion. See the Pennsylvania decisions cited in this paragraph.

The court below dismissed the amended complaint upon the motion of the defendant on the ground that it stated no cause of action against the defendant. It committed no error in doing so.

Judgment affirmed.

[10] See Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; and Guaranty Trust Co. v. York, 65 S.Ct. 1464.

[11] See Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 233, 148 A.L.R. 841.

[12] See New York Life Ins. Co. v. Levine, 3 Cir., 138 F.2d 286, 288, and the authorities cited in note 4 of Judge Maris' opinion.