**Lar DALY, Plaintiff,**

v.

**WEST CENTRAL BROADCASTING COMPANY, a Corporation, Metropolitan Broadcasting Corporation, a Corporation, Radio Moline, Inc., a Corporation, Rock Island Broadcasting Company, a Corporation, Peoria Broadcasting Company, a Corporation, Frudeger Broadcasting Company, a Corporation, Midwest Television, Inc., a Corporation, Defendants.**

**Lar DALY, Plaintiff,**

v.

**WBLN TELEVISION, INC., a Corporation, Bloomington Broadcasting Corporation, a Corporation, Prairie Television Company, a Corporation, Illinois Broadcasting Company, a Corporation, Quincy Broadcasting Company, a Corporation, Lee Broadcasting Company, a Corporation, Plains Broadcasting Company, a Corporation, WPFA, Inc., a Corporation, Lincoln Broadcasting Company, a Corporation, WTAX, Inc., a Corporation, Defendants.**

Civ. A. Nos. Pen 2403, 2903.

United States District Court
S. D. Illinois, N. D.
Jan. 12, 1962.

Falkenberg & Falkenberg, Chicago, Ill., for plaintiff.

Victor P. Michel, Peoria, Ill., Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for West Central Broadcasting Co. and Peoria Broadcasting Co.

Younge, Frederick & Rutherford, Peoria, Ill., for Metropolitan Broadcasting Corp.

Livingston, Barger & Brandt, Bloomington, Ill., for Bloomington Broadcasting Corp.

Swain, Johnson & Gard, Peoria, Ill., for Radio Moline, Inc., and Frudeger Broadcasting Co.

Gillespie, Burke & Gillespie, Springfield, Ill., for Bloomington Broadcasting Corp., Prairie Television Co., Illinois Broadcasting Co., Lee Broadcasting Co., WTAX, Inc., and Rock Island Broadcasting Co.

Barber & Barber, Springfield, Ill., for Quincy Broadcasting Co., Plains Television Corp., and Lincoln Broadcasting Co.

Sorling, Catron & Hardin, Springfield, Ill., for WPFA, Inc.

Arvey, Hodes & Mantynband, Chicago, Ill., for Illinois Broadcasting Co., Lee Broadcasting Co. and Rock Island Broadcasting Co.

MERCER, Chief Judge.

Plaintiff, Lar Daly, filed his complaint against West Central Broadcasting Company and others, hereinafter referred to as the defendants, West Central Broadcasting Company and others,[1] for damages alleged to arise out of defendants' violation of Section 315(a) of the Communications Act of 1934. 47 U.S.C.A. § 315(a). All of the defendants are engaged in the business of broadcasting television and/or radio programs over commercial stations, under authority granted by the Federal Communications Commission, hereinafter FCC, under the Act, 47 U.S.C.A. § 151 et seq.

Section 315(a) provides, in pertinent part:

> "If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station: * * *"

As a summary of the allegations of the complaint reveals, the theory of the cause of action is that § 315(a) creates, in the individual candidate, a contract right to "equal opportunities" to espouse his political cause. Thus, the complaint alleges that plaintiff, on and prior to March 5, 1956, was a legally qualified candidate, under the laws of Illinois and certain other States, for the nomination as the Republican Party candidate for President of the United States; that the National Broad-

---

1. The case is consolidated with No. 2903, Lar Daly v. WBLN Television, et al. originally filed in the Southern Division of the Southern District of Illinois. The other defendants are Metropolitan Broadcasting Company, Radio Moline, Inc., Rock Island Broadcasting Company, Peoria Broadcasting Company, Frudeger Broadcasting Company, Midwest Television, Inc., WBLN Television, Inc., Bloomington Broadcasting Corporation, Prairie Broadcasting Company, Illinois Broadcasting Company, Quincy Broadcasting Company, Lee Broadcasting Company, Plains Television Corporation, WPFA, Inc., Lincoln Broadcasting Company, and WTAX, Inc.

casting Company, American Broadcasting Company and Columbia Broadcasting System, hereinafter, respectively, NBC, ABC and CBS, granted to Dwight D. Eisenhower, then President of the United States and an aspirant to the Republican Party nomination as its candidate for re-election, free use of their network facilities on February 29, 1956, and on divers dates in April and August, 1956; that plaintiff invoked § 315(a) on March 5, 1956, and demanded that NBC, ABC and CBS afford to him free and equal radio and television broadcast time, coextensive with that granted to Mr. Eisenhower; that all three networks refused his request for equal time; that defendants, severally, are affiliated with either NBC, ABC or CBS; that a public policy contract between plaintiff and the several defendants arose by virtue of the "equal opportunities" provision of § 315(a), the simultaneous certification of plaintiff and Mr. Eisenhower by the several states as legally qualified candidates for the same public office, the defendants having afforded benefits of the statute to Mr. Eisenhower and plaintiff's request to defendants to fulfill their equal time obligation to plaintiff under the statute;[2] that broadcast time accruing to a candidate under § 315(a) is a valuable property right of which plaintiff was deprived by defendants' refusal to grant to him "opportunities" equal to those granted to Mr. Eisenhower; that the broadcast time to which plaintiff became entitled in the premises was sold by defendants to advertising purchasers resulting in defendants' "unjust enrichment"; and that the named defendants are the principal affiliates of NBC, ABC and CBS within the territorial jurisdiction of this court. The complaint is concluded with a prayer for both compensatory and exemplary damages.

Each of the defendants has moved to dismiss the complaint. In the view which I take of the case, it is not necessary to analyze each of the motions separately or to catalogue the several grounds upon which dismissal is sought.

Indulging every presumption in favor of the adequacy of the complaint, including some presumptions to which the largely conclusionary pleading is not entitled, the complaint must be dismissed for the reason that the Act provides no statutory basis for this private cause of action. 47 U.S.C.A. § 151 et seq. "The Communications Act of 1934 did not create new private rights." Scripps-Howard Radio v. FCC, 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229. Thus, it is said in Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 183 F.2d 497, 500:

> " '* * * The enforcement of the Act and the development of the concept of public interest under the Act are thus entrusted primarily to an administrative agency. The only function of the courts in the enforcement of the Act is the exercise of the right to enforce or review orders of the Commission under Sections 401 and 402 of the Act. McIntire v. Wm. Penn. Broadcasting Co. of Philadelphia, 3 Cir., 151 F.2d 597.
>
> " 'In the light of the scheme of enforcement by means of an administrative agency which Congress has chosen to select, it cannot be held that Congress intended to create by implication additional rights such as [a private right of action under the Act for breach of contract]. * *' " (Quoting the opinion of the District Court, Massachusetts Universalist Convention v. Hildreth & Rogers Co., 87 F.Supp. 822, 825.

In addition to the provisions for administrative enforcement of the Act, Sections 501 and 502 provide for penal sanctions against persons who wilfully violate the Act or regulations lawfully pro-

2. The complaint is devoid of any allegation that plaintiff ever requested either of the defendants to afford him time equal to that given by the networks to Mr. Eisenhower. The only allegation is that plaintiff's requests were directed to NBC, ABC and CBS. In fact, there is no allegation that defendants, or either of them, actually broadcast the Eisenhower speeches of which complaint is made.

mulgated by the FCC pursuant thereto. 47 U.S.C.A. §§ 501, 502. But no provision of the Act creates, either by expression or necessary implication, any private right of action which is cognizable, in the first instance, by the district courts.

In the absence of congressional expression of intent to the contrary, the power granted to the FCC to enforce the Act and to regulate broadcasting and the power of enforcement by penal sanctions are conclusive. Cf., Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 375, 377, 78 S.Ct. 352, 359, 2 L.Ed.2d 340.[3]

Felix v. Westinghouse Radio Stations, 3 Cir., 186 F.2d 1, upon which plaintiff relies, involved only the question whether, under the circumstances of that case, Section 315(a) might be pleaded as a defense to an action for defamation. To the extent that Weiss v. Los Angeles Broadcasting Co., 9 Cir., 163 F.2d 313, carries the implication that private actions for damages may arise out of a violation of § 315(a) the reasoning of that opinion is respectfully rejected.

The theory of action upon which this complaint is based does not exist under the Act. I place my decision squarely upon that ground, and find it, therefore, unnecessary to consider other grounds asserted for dismissal of the complaint.

The several motions to dismiss are allowed and judgment will enter dismissing the complaint as to defendants and each of them.

---

**3.** The history of this controversy reveals that plaintiff did request the FCC to order the networks to grant him equal time to reply to the February, 1956, Eisenhower appearance. On April 11, 1956, the FCC, by letter to plaintiff, rejected that request for the reason that information submitted to the agency did not show unequivocally that plaintiff was a "legally qualified candidate" for the Republican nomination.

Plaintiff then filed a complaint in the United States District Court for the Northern District of Illinois, against NBC, ABC, CBS and Mutual Broadcasting System, praying a declaration that he was a "legally qualified candidate", an order requiring the networks to afford equal time to plaintiff and, alternative-

ly, for damages. Neither the FCC nor the United States was made a party to the suit and review of the FCC ruling was not requested. That complaint was dismissed on August 14, 1956.

On October 3, 1956, plaintiff filed a complaint with the FCC, praying a declaration that he was a legally qualified candidate for the Republican Party presidential nomination. That complaint was rejected by the FCC on October 31, 1956, for the reason that the question had become moot since Mr. Eisenhower had already received the Republican nomination. A petition for review was dismissed as moot by the Court of Appeals for the Seventh Circuit, and certiorari was denied. Daly v. United States, 355 U.S. 826, 78 S.Ct. 35, 2 L.Ed.2d 40.