Norman M. ACKERMAN, Gary S. Burstein and divers others similarly situated, Plaintiffs,

v.

COLUMBIA BROADCASTING SYSTEM, INC., National Broadcasting Company, Inc. and American Broadcasting Company, Inc., Defendants.

No. 68 Civil 4294.

United States District Court
S. D. New York.

July 9, 1969.

William M. Erlbaum, Kew Gardens, N. Y., for plaintiffs.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for defendant Columbia Broadcasting System Inc.; Ambrose Doskow, Alan Schwartz, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant National Broadcasting Company, Inc.; Lawrence J. McKay, Michael F. Armstrong, Lawrence C. Browne, New York City, of counsel.

Hawkins, Delafield & Wood, New York City, for defendant American Broadcasting Company, Inc.; Robert G. Desmond, New York City, of counsel.

EDWARD WEINFELD, District Judge.

This action was commenced on the eve of the 1968 Presidential election by two plaintiffs, one a practicing psychiatrist and the other a practicing clinical psychologist, against the three major television and radio networks, charging a conspiracy among them to deprive Dick Gregory, a Presidential candidate, and his supporters of "aliquot" television broadcast time[1] in connection with his campaign.

On November 1, 1968, Judge Wyatt denied plaintiffs' motion for preliminary injunctive relief to restrain the defendants from denying Gregory such aliquot time. Judge Wyatt expressed "grave doubts" as to the existence of any ground for jurisdiction, but rested his action on plaintiffs' failure to show either that they had stated a claim on which relief could be granted or, if they had, that they had standing to do so.

Plaintiffs then filed an amended complaint, alleging as jurisdictional bases 28 U.S.C. sections 1331 and 1343, 47 U.S.C. section 315, the First, Fifth, Ninth, Tenth and Fifteenth Amendments to the Constitution, and the common law. The plaintiffs allege that the conspiracy to deprive Gregory of aliquot time was solely the result of his race and political beliefs; that demand for such time was made on behalf of Gregory but refused; that they, on behalf of themselves and others, appealed to the Federal Communications Commission, but were "unsuccessful." The amended complaint further alleges the denial of equal time to Gregory was impermissible censorship and foreclosed a reasonable opportunity for the discussion of conflicting views on issues of public importance; also, that one effect of the denial "has been and is to generate a sense of inherent psychological inferiority among his followers, and more particularly, among members of the black race," as well as to distort the political and electoral processes in favor of the candidacies of Messrs. Nixon, Humphrey and Wallace.

Plaintiffs, further alleging they cannot ascertain "with any degree of certainty the exact amount in * * * money damages," seek an injunction permanently restraining the defendants from all forms of broadcast discrimination and selection by them of so-called "major" and "minor" candidates and compelling them to afford Gregory and any and all other bona fide candidates for public office aliquot television broadcast time. Plaintiffs also seek five million dollars in punitive damages.

Gregory is not now, nor has he ever been, a party to this litigation; more-

---

1. The meaning of this term is not defined by plaintiffs. It may be taken to mean the amount of air time proportional to Gregory's alleged electoral strength, although plaintiffs do not indicate how this factor is determined before the election. One defendant assumes it means "equal time." Memorandum of Law in Support of Defendant NBC's Motion to Dismiss 6n.

over, there is no allegation that the demand upon the defendants for aliquot time on behalf of Gregory or the appeal to the Federal Communications Commission with respect thereto was made with his consent.

The defendants move pursuant to Rules 12, 19 and 23 of the Federal Rules of Civil Procedure to dismiss the amended complaint for lack of subject matter jurisdiction, want of standing, failure to state a claim upon which relief may be granted, failure to join an indispensable party, and improper maintenance of a class action.

The motion was heard more than three months after the 1968 election. Hence plaintiffs' request for injunctive relief is moot insofar as it pertains to that election. What remains is an action to obtain permanent injunctive relief to compel the defendants to grant aliquot television broadcast time to "all * * * bona fide candidates for public office" and to recover the sum of five million dollars in punitive damages.

### (1) Federal Communications Act.

Plaintiffs first invoke section 315 of the Communications Act of 1934, 47 U.S.C. section 315, which in substance provides that a licensee permitting a legally qualified candidate for any public office to use a broadcasting station must afford equal opportunities to all other such candidates for that office in the use of the station. The Court has subject matter jurisdiction insofar as the complaint purports to allege a violation of the Communications Act.[2] However, the complaint, insofar as its rests upon section 315(a) of the Act, fails to state a claim upon which relief can be granted. Neither the Act in general nor section 315(a) in particular created new private rights[3] or authorized suits to recover damages.[4] The enforcement of section 315(a) and the vindication of the public interest are vested in the Federal Communications Commission.[5]

That plaintiffs also seek injunctive relief affords no basis for maintenance of this suit. The Commission is the primary and exclusive forum in which to institute and prosecute alleged violations of section 315(a) by broadcast licensees.[6] The sole function of the courts in enforcing the statutory provision is to review final orders of the FCC in accordance with the statutory scheme.[7]

Alleged violations, from their very nature, are dealt with on a day-to-day basis by the FCC. Thus, under its regulations and procedures, an aggrieved candidate may, in a proper case, obtain prompt relief from a denial of equal opportunity in the use of the broadcast facilities with a right of appeal to the United States Court of Appeals.[8] These plaintiffs stand in no better position than an aggrieved candidate who is directly affected by a denial of an equal opportunity as required by section 315(a).[9]

2. Weiss v. Los Angeles Broadcasting Co., 163 F.2d 313, 314 (9th Cir. 1947), cert. denied, 333 U.S. 876, 68 S.Ct. 895, 92 L.Ed. 1152 (1948); Gordon v. NBC, 287 F.Supp. 452, 454 (S.D.N.Y.1968); cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

3. Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 138, 60 S.Ct. 437, 84 L.Ed. 656 (1940).

4. Daly v. CBS, 309 F.2d 83, 86 (7th Cir. 1962).

5. See Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

6. Gordon v. NBC, 287 F.Supp. 452, 455 (S.D.N.Y.1968).

7. Communications Act of 1934, §§ 401, 402, 47 U.S.C. §§ 401, 402; McIntire v. Wm. Penn Broadcasting Co., 151 F.2d 597, 600 (3d Cir. 1945), cert. denied, 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); Massachusetts Universalist Convention v. Hildreth & Rogers Co., 87 F.Supp. 822, 825 (D.Mass.1949), aff'd per curiam, 183 F.2d 497 (1st Cir. 1950).

8. Communications Act of 1934, § 402(a) and (b), 47 U.S.C. § 402(a) and (b).

9. "[Section 315] applies only to campaign appearances by candidates, and not by family, friends, campaign managers, or other supporters." Red Lion Broad-

Although plaintiffs allege that they have "unsuccessfully" appealed to the Commission, they do not aver that they commenced any proceeding in accordance with the rules and regulations of the Commission, that they sought judicial review of the Commission's denial of relief, or that such review is unavailable to them. They have failed to exhaust available administrative procedures under the Act. They do not suggest that they lack standing to assert their claims before the Commission.[10]

 The "fairness doctrine," recently considered in Red Lion Broadcasting Co. v. FCC,[11] affords no basis for relief. That doctrine, which "originated very early in the history of broadcasting and has maintained its present outlines for some time * * *, is distinct from the statutory requirement of § 315 * * *."[12] The doctrine requires that the broadcaster give coverage to public issues that is adequate and fair in its reflection of opposing views; also that the licensee obtain programming at his own initiative if available from no other source.[13] In the circumstances of this case plaintiffs' passing reference to the doctrine adds nothing to the arguments they advance under section 315.

### (2) Civil Rights Act.

 Plaintiffs fail to state a claim upon which relief may be granted under section 1343 of Title 28. That statute, consisting of four subsections, confers original jurisdiction on the district courts in actions relating to the protection of civil rights and the elective franchise. Upon analysis, no subsection is here applicable. The first two subsections incorporate by reference 42 U.S.C. section 1985 (the Ku Klux Act of 1871), consisting of three sections. Subsections (1) and (2) of section 1985 relate to interference with federal officers and the administration of justice. Clearly these provisions are not reached by plaintiffs' charges. The third subsection of section 1985 prohibits conspiracies to deprive persons of the equal protection of the laws and "to prevent, by force, intimidation, or threat" a qualified voter "from giving his support or advocacy * * * in favor of the election of any lawfully qualified person as an elector for President or Vice President * * *." This provision is limited to "state action" or action "under color" of state law.[14]

The third subsection of section 1343 of Title 28 is also limited, this time in express terms, to conduct under color of state law. It authorizes actions "to redress the deprivation, under color of any State law * * *, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights * * *." For present purposes it may be assumed that the defendants' conduct partakes of "public action" by virtue of their status as entities regulated by a federal administrative body, as associations of federally licensed broadcasters and as grantees of a federal proprietary interest held in trust for the public.[15] However, defendants' alleged conduct is of a federal, not a state,

casting Co. v. FCC, 395 U.S. 382, 89 S.Ct. 1794, 1803, 23 L.Ed.2d 371 (1969).

10. Any doubt as to plaintiffs' standing to proceed before the Commission should be set at rest by the Commission's own statement. See FCC, Television Network Program Procurement, H.R.Rep. No. 281, 88th Cong., 1st Sess. 20 (1963). *Cf.* Office of Communication v. FCC, 123 U.S.App.D.C. 328, 359 F.2d 994 (1966).

11. 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed. 2d 371 (1969).

12. *Id.* at 369–370, 89 S.Ct. at 1796.

13. *Id.* at 378, 89 S.Ct. at 1794.

14. Collins v. Hardyman, 341 U.S. 651, 661–662, 71 S.Ct. 937, 95 L.Ed. 1253 (1951).

15. Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 390–395, 89 S.Ct. 1794, 23 L. Ed.2d 371 (1969); Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 331–333, 66 S.Ct. 148, 90 L.Ed. 108 (1945); NBC v. United States, 319 U.S. 190, 214–221, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).

character;[16] further, plaintiffs do not allege that defendants acted under color of any state law.

 Finally, subsection (4) of section 1343 affords no ground for relief. It authorizes actions "to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." The complaint does not charge any violation of any Act of Congress relating to the protection of plaintiffs' civil rights, nor can it be construed as alleging that defendants' acts infringed upon the plaintiffs' right to vote.

### (3) Constitutional claims.

Plaintiffs allege that the defendants, in representing Gregory as a "minor" candidate and in denying aliquot time to him, have "distorted and contaminated electronic informational environment," and thereby deprived them of their First, Fifth, Ninth, Tenth and Fifteenth Amendment rights.

 Assuming arguendo that plaintiffs' allegations are sufficient to spell out a claim upon which relief may be granted,[17] there still remains the question whether Congress has authorized a suit for such a claim in the Federal District Court. The Federal District Court may entertain jurisdiction only within the limits prescribed by Congress.[18] Plaintiffs contend that 28 U.S.C. section 1331 affords the requisite jurisdictional basis for their constitutional claim, but they point to no statute apart from section 1331 to support the asserted claim. As our Court of Appeals recently noted: "The view that statutory authority [apart from section 1331] is a prerequisite for a federal cause of action for damages, even though the wrong complained of is the violation of a constitutional right, has been adopted by all of the courts which have examined this question recently." [19] Accordingly, in the absence of express statutory authority, plaintiffs' cause of action for money damages based upon alleged violation of their constitutional rights fails to state a claim for which relief can be granted under section 1331.[20]

 The claim for equitable relief stands on a different footing. The inherent federal judicial power to enjoin threatened or continued violation of constitutional rights is beyond question.[21] However, two jurisdictional impediments bar maintenance of the claim for injunctive relief.

 First, section 1331(a) of Title 28 requires a jurisdictional minimum amount in excess of $10,000.[22] The Court is under a duty to raise the issue of the absence of the required jurisdictional amount even if the parties to the litigation have not.[23] The rule applies to claimed infringements of civil and po-

---

16. Snyder v. Harris, 394 U.S. 332, 342 n. 2, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (Fortas, J., dissenting); Wheeldin v. Wheeler, 373 U.S. 647, 650 & n. 2, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

17. Plaintiffs contend their allegations are sufficient to assert a claim of violation of their First Amendment right "to receive information and ideas," Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), through an undistorted and uncontaminated "electronic informational environment." However, it is unnecessary to decide this question or those raised by plaintiffs with respect to the alleged violation of constitutional rights under the Fifth, Ninth, Tenth and Fifteenth Amendments.

18. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); 1 Moore's Federal Practice ¶ 0.60 [4], at 608 (2d ed. 1964).

19. Bivens v. Six Unknown Named Agents, 409 F.2d 718, 720 (2d Cir. 1969).

20. *Id.* at 721–722.

21. Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

22. See 1 Moore's Federal Practice ¶¶ 0.95–.96, at 860 et seq. (2d ed. 1964).

23. Clark v. Paul Gray, Inc., 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939).

litical rights absent a statutory provision eliminating the dollar requirement.[24] Plaintiffs say that it would be impossible "to ascertain with any degree of certainty the exact amount in compensatory money damages" caused them by defendants' alleged acts. But no exception exists to the $10,000 requirement simply because the alleged damages under the asserted claim may be incapable of measurement.[25] Thus, jurisdiction cannot be established under section 1331(a).

 Second, plaintiffs' request for injunctive relief is so premature as to deprive their claim of the status of a "case or controversy." The adjudication of constitutional questions requires the presence of "concrete legal issues, presented in actual cases, not abstractions * * *."[26] Here plaintiffs do not even allege that Gregory will be a Presidential candidate in 1972. So far as appears from the complaint, there is no prospect, real or immediate, of a campaign involving Gregory, and it is wholly conjectural that another occasion will arise in which defendants will deny him air time as it is alleged they did last November.[27] It is not enough that plaintiffs seek an injunction applying generally to any prospective candidate for office, Presidential or otherwise. "The constitutional question * * * must be presented in the context of a specific live grievance."[28] One cannot now say that with respect to the next Presidential election Gregory or another candidate of his race or political views will be a candidate for the Presidency, or, for that matter, that there will be any candidate for the Presidency who comes within plaintiffs' definition of a "minor" candidate. In the circumstances here presented, plaintiffs in effect seek an advisory opinion on a hypothetical issue.[29]

### (4) Common law.

 Plaintiffs' allegations that jurisdiction arises under the common law cannot be sustained. Federal courts are empowered to hear only such cases as are within the judicial power of the United States and have been entrusted to them as jurisdictional grants by Congress.[30]

The motion to dismiss the amended complaint is granted.[31]

24. Hague v. CIO, 307 U.S. 496, 507–508, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.); Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 826 (2d Cir. 1967).

25. Giancana v. Johnson, 335 F.2d 366, 368–369 (7th Cir. 1964), cert. denied, 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed. 2d 702 (1965); Carroll v. Somervell, 116 F.2d 918, 920 (2d Cir. 1941); cf. Hague v. CIO, 307 U.S. 496, 529, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Stone, J.); Kurtz v. Moffitt, 115 U.S. 487, 498, 6 S.Ct. 148, 29 L.Ed. 458 (1885).

26. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

27. Cf. Golden v. Zwickler, 394 U.S. 103, 109, 89 S.Ct. 956 (1969).

28. Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

The fact that the Golden case involved a suit for declaratory judgment rather than for an injunction does not affect its applicability to the present litigation. The Golden decision rested on constitutional rather than statutory principles which are as relevant to a suit for injunctive relief as they are to one for declaratory relief.

29. Cf. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

30. Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943); United States v. Hudson & Goodwin, 11 U.S. (7 Cr.) 32, 33, 3 L.Ed. 259 (1812); Klein v. Lee, 254 F.2d 188, 190 (7th Cir. 1958), vacated as moot, 358 U.S. 645, 79 S.Ct. 536, 3 L.Ed.2d 568 (1959); Sinchak v. Parente, 262 F.Supp. 79, 82–83 (W.D.Pa.1966).

31. The above disposition makes it unnecessary to consider other matters urged by defendants, such as lack of standing, absence of an indispensable party, and class action deficiencies.