Tom **SMOTHERS** et al., Plaintiffs,

v.

**COLUMBIA BROADCASTING SYSTEM, INC., Defendant.**

**No. 69–1898.**

United States District Court,
C. D. California.

Nov. 14, 1972.

Slaff, Mosk & Rudman, by George Slaff, Stanley Fleishman and Bruce M. Polichar, Los Angeles, Cal., for plaintiffs Tom Smothers, Dick Smothers, Comedic Productions, Inc.

Wilmer, Cutler & Pickering, Washington, D. C., and O'Melveny & Myers by William W. Vaughn, Los Angeles, Cal., for defendant Columbia Broadcasting System, Inc.

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

HAUK, District Judge.

This matter arises upon the Plaintiffs' complaint for damages and an injunction for alleged violation of Federal Constitutional rights. Plaintiffs have attempted to maintain the action by claims for relief under the First and Fifth Amendments to the United States Constitution and under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 151 et seq., as a Federal question case, 28 U.S.C. § 1331, alleging that Defendant CBS's conduct abridged and denied the Smothers Brothers' freedom of speech and press; restrained their right to present entertaining and informative programs and in doing so deprived them of liberty and property without due process of law; denied the Smothers Brothers equal protection of the laws; denied them access to the airways controlled by CBS; and curtailed the public's right to know and choose between various ideas and entertainment. Plaintiffs seek $1,-000,000 for alleged injuries, an additional $2,000,000 in punitive damages, and a permanent injunction against CBS preventing it from censoring any entertainment programs whatsoever, and not just the Smothers Brothers' shows, no matter what political, social, moral, or aesthetic ideas the programs might express or tend to propagate.

## SUMMARY OF FACTS

In 1966 Comedic Productions, Inc., owned and operated by the Smothers Brothers as producers of their shows, and Columbia Broadcasting System, Inc., entered into an agreement whereby Comedic would provide twenty-six programs to CBS for the 1966–67 television season, the series to run for five seasons upon annual options with increasing license fees to be paid for each new season's series optioned by CBS. In April, 1969, CBS cancelled out under the agreement for reasons which are in dispute between the parties but not in issue in this particular case. In September, 1969, Plaintiffs filed the instant action, No. 69–1898, for alleged violation of their constitutional rights along with two other actions—one for alleged violation of the Federal Antitrust statutes, No. 69–1899, and the other one for alleged violation of conventional contract rights, No. 69–1890. We are here concerned only with No. 69–1898, wherein the action is founded upon the claim that CBS, by its policy of insisting upon preview and "censorship", deleted from the taped Smothers Brothers shows material which CBS believed to be objectionable as not fit for prime time entertainment on its stations and network, thereby allegedly depriving Plaintiffs of a number of their Federal constitutional rights under the First and Fifth Amendments to the Constitution of the United States. The Antitrust action, No. 69–1899, was taken off calendar to await determination of the other two actions. At the pre-trial conference the Court set the contract action, No. 69–1890, for trial at a later date and expressed, *sua sponte,* the Court's doubt about its jurisdiction or at least the validity of the constitutional rights suit here in No. 69–1898, because there was no allegation by Plaintiffs that their constitutional rights had been or were being violated by "governmental or state action" as distinguished from "private activities." The Court then requested that the parties by appropriate pleadings bring this issue into focus and inform the Court of the facts and law which should govern its decision on whether to proceed with this "constitutional rights" case or not.

■ ■ Whereupon Defendant filed its Motion for Summary Judgment, Plaintiffs filed their Opposition and Defendant countered with its Reply to the Opposition, all supported by excellently prepared and marshalled points and authorities. After hearing and full argu-

ment the Court granted the Motion for Summary Judgment on September 18, 1972, signing the Findings of Fact, Conclusions of Law and Judgment proffered by Defendant. Now by this opinion and order the Court reaffirms such action and puts in writing the additional facts, conclusions, and reasoning which led the Court to take the action it did in September. Unfortunately a necessary and long postponed hip replacement operation has resulted in delaying this Opinion until now, but the Court considers and orders that it shall also constitute findings of fact and conclusions of law in addition to those formal findings and conclusions heretofore signed.[1]

The issues involved are:

1. Can the Plaintiffs base a private claim on the Federal Communications Act of 1934?

2. Can a private right of action for injunctive relief spring from the First and Fifth Amendments for violations of constitutional rights by a "private party" as distinguished from violations by a "governmental or state agency"?

3. Does CBS's conduct amount to "governmental or state action" within the meaning of the Constitution, which would allow suit based on a violation of constitutional rights of Plaintiffs by CBS's conduct?

### THERE IS NO PRIVATE ACTION UNDER THE FEDERAL COMMUNICATIONS ACT OF 1934

The Complaint at the outset alleges in paragraph 2 that this action arises under the Federal Communications Act of 1934, 47 U.S.C. § 151 et seq., as well as under the First and Fifth Amendments to the Constitution. Let us take up this theory first. It has long been recognized that the Communications Act "did not create new private rights." Scripps-Howard Radio v. FCC, 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229 (1941). In light of this fact numerous courts have held that a violation of the Act does not give rise to a private cause of action for damages or injunctive relief. McIntire v. Wm. Penn Broadcasting Co., 151 F.2d 597, 600 (3rd Cir. 1945), cert. den. 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); Post v. Payton, 323 F. Supp. 799, 802 (E.D.N.Y.1971); Ackerman v. CBS, 301 F.Supp. 628, 631 (S.D. N.Y.1969); Gordon v. National Broadcasting Co., 287 F.Supp. 452, 455 (S.D. N.Y.1968); Daly v. West Central Broadcasting, 201 F.Supp. 238, 240–241 (S.D.Ill.N.D.1962), aff'd sub nom., Daly v. CBS, 309 F.2d 83 (7th Cir. 1962); Massachusetts Universalist Convention v. Hildreth & Rogers Co., 87 F.Supp. 822, 824–825 (D.Mass.1949), aff'd 183 F.2d 497 (1st Cir. 1950). The rationale of these decisions was stated in Post v. Payton, supra, where the court held:

"Assuming that one could spell out from the complaint a violation of the Act by the failure of the defendant-trustees to comply with the terms and conditions set forth in their license, the remedy would nevertheless lie with the Commission and not in the district courts . . . It is clear that the Act created no new private rights nor afforded persons in plaintiffs' position a right to institute an action in the district courts (citations), the Commission being charged with its enforcement and providing the exclusive forum in which alleged violations may be vindicated. (Citations.)

1. The Court has jurisdiction to determine whether Plaintiffs have stated or can prove a claim for relief. (Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 [1946]).

The motion for summary judgment is a proper one to determine this action, for there are no genuine issues as to any material facts in controversy. All material facts have been submitted by affidavits of Robert V. Evans, a CBS vice-president, and George Slaff, counsel for the Plaintiffs, for the Court's consideration in compliance with Rule 56 of the Federal Rules of Civil Procedure. The Court has afforded the parties an opportunity to place before it any facts they deem relevant. Now the Court passes on the merits of the claim and looks beyond the allegations in the complaint.

"Consequently, the complaint fails to set forth a claim upon which relief can be granted under the Act." (323 F.Supp. 802)

▇ There have been cases which have held that private actions can arise from violations of a Federal statute and from these violations there can be implied a private right of action for damages.[2] However, no cases even suggest or imply that there can exist a private action without the violation of a specific provision of a Federal statute, and of course we must draw the conclusion, inescapable as it is, that without allegations of conduct by CBS in clear violation of a specific provision of the Communications Act, Plaintiffs have failed to state a claim for relief thereunder and their theory in that regard disintegrates.

## THERE IS NO PRIVATE ACTION UNDER THE FIRST AND FIFTH AMENDMENTS TO THE FEDERAL CONSTITUTION

Plaintiffs pray for injunctive relief by which CBS would be permanently enjoined from censoring any entertainment programs presented over its television network, and any expressions of social, political, aesthetic, moral or other ideas and experiences which are protected from censorship by the First and Fifth Amendments to the United States Constitution.

▇ Plaintiffs do not have standing to request an injunction on behalf of the public or other producers than themselves alone. Nor have they sought to have this declared a class action under F.R.Civ.P., Rule 26. The Supreme Court has held that one may sue to seek redress for injuries done to him, but may not seek redress for injuries done to others, unless the situations and injuries are similar.[3] Plaintiffs cannot, therefore, sue on behalf of the general public or other producers because there are absolutely no allegations that their situations and injuries are the same or similar.

In Gordon v. National Broadcasting Company, 287 F.Supp. 452 (S.D.N.Y. 1968), the plaintiff made a similar claim on behalf of the public. He was a candidate for President, and he alleged the defendant did not cover his activities as a candidate. The court pointedly held:

"Close scrutiny of the complaint reveals that most of the damage alleged to have been caused as a result of the defendant's alleged blackout, is claimed to have been suffered by the United States as a whole, rather than by the individual plaintiff, and it is clear that the plaintiff has no standing in this Court to assert such claims." 287 F.Supp. 454–455.

▇ The claim for injunctive relief is also moot as to Comedic and the Smothers Brothers, since they are no longer producing entertainment programs for broadcast over any CBS facilities, stations or network.

▇ Plaintiffs pray for monetary damages based on the alleged violation of their First Amendment rights. How-

---

2. *See*, for instance, J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1556, 12 L.Ed.2d 423 (1964), violation of Section 14(a) of the Securities Exchange Act of 1934; Loncassion v. Leekity, 334 F. Supp. 370 (D.C.N.M.1971), violation of the Indian Civil Rights Act; Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), violation of Section 15 of the Rivers and Harbors Act of 1899. However, in each of these cases the Court found a violation of specifically forbidden conduct set forth clearly in the statute which could be used as a grounds for a private cause of action. In the instant case there is no allegation of any conduct by CBS that violates any specific provision of the Federal Communications Act.

3. In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Supreme Court held that while the plaintiff (a black man who was a guest of a member of the Lodge but had been refused service) had standing to seek injunctive relief on behalf of guests who had similarly been refused service, he had no standing to maintain a claim for injunctive relief on behalf of others who had been excluded from membership in the Lodge.

ever, no court has ever sustained a case awarding damages based on a violation of the First Amendment, even where the Defendant was a "governmental agency" or a "governmental employee" as distinguished from a private party. This Court is not going to be the first to do so.[4]

## COLUMBIA BROADCASTING SYSTEM'S ALLEGED ACTIVITIES DO NOT CONSTITUTE "GOVERNMENTAL OR STATE ACTION"

The Plaintiffs' main contention is that CBS's activities are so heavily regulated and subject to the control of the Federal Communications Commission that those activities are necessarily of a "governmental" character and, therefore, constitute "governmental or state action."

Plaintiffs argue by analogy that CBS's activity is governmental in character in comparing it to other cases which have held that certain apparently private activity was "governmental." They cite Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), where the Supreme Court held that the issue of "governmental or state" character must be resolved

in the context of the facts in each particular case.[5] We find that under all the facts of this case before us, that the activities of CBS are private and *not* "governmental or state action." In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Supreme Court held that activities of a private party do not assume "governmental or state" character unless and until the private party discharged a function or performs a service that otherwise would in all likelihood be performed by the government or the state.[6] The Court pointed out that licensing and regulation of liquor by the state agency did not transform private discrimination by a private club serving liquor into "state action," and further held that "the State must have 'significantly involved itself with invidious discriminations,' Reitman v. Mulkey, 387 U.S. 369, 380 [87 S.Ct. 1627, 18 L.Ed.2d 830] (1967), in order for the discriminatory action to fall within the ambit of the constitutional prohibition." *Moose Lodge* at page 173, 92 S.Ct. at page 1971. Moreover, regulations of the Pennsylvania Liquor Board in *Moose Lodge* are infinitely more restrictive than those which are found in the present case since

---

4. The Plaintiffs base their claim on Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, *Bivens* was a Fourth Amendment unlawful search and seizure violation by Federal, that is "governmental" agents. It should be noted that in the instant case there were no Federal employees or any kind of governmental agents involved in the alleged actions of CBS. Moreover, *Bivens* was limited to a cause of action arising under the Fourth Amendment. As Justice Harlan emphasized, the right being protected in *Bivens* was the right of privacy and that is "a horse of a different color" compared to First Amendment rights. Bivens at page 408, 91 S.Ct. at page 2011.

And at least one District Court has specifically held that *Bivens* is limited to cases arising under the Fourth Amendment. Davidson v. Kane, 337 F.Supp. 922, 924–925 (E.D.Va.1972).

5. In *Burton* the Court found the relationship between the private restaurant lessee

and the public parking authority lessor to be a joint participation in the challenged activity of refusing to serve black persons. Plaintiffs here, Smothers Brothers and Comedie, try to equate their situation with that one. However, they fail because that case covers discrimination in a public restaurant located in a public building used for public parking purposes which was *owned* by a public entity —clearly "governmental or state action."

6. Plaintiffs attempt to distinguish Moose Lodge on the basis that the governmental and state control, and the relationship between the Lodge and the regulating Agency (Pennsylvania Liquor Board) were not as comprehensive or close as the control or relationship of the FCC and CBS's activities. This argument does not overcome the requirement that the private party must be performing functions that normally would be performed by the government or state.

the FCC in no way interferes with, or censors, CBS's or any other broadcaster's specific programming decisions.[7] The few FCC cases which have found "governmental or state action" deal with the FCC's direct action and involvement with the broadcasting licensee's decision and the violations of constitutional rights are charged to activities of the FCC itself, clearly constituting "governmental or state action." [8]

The best discussion of the fact that the FCC's regulation of CBS does not result in "governmental or state action" is found in Post v. Payton, 323 F.Supp. 799 (E.D.N.Y.1971). In that case a radio station's staff brought an action against the defendant officers of the University, which in turn owned the station, because they fired the plaintiffs for using obscenities on the air. Two of the bases for relief were violations of the First and Fourteenth Amendments, based on alleged "governmental or state action." The District Court, in rejecting the contention that "governmental or state action" was involved, said:

> "The Government is not charged with the duty of broadcasting or formulating the program of any particular radio station. In fact, the Communications Act of 1934 exclusively reserves station programming to the licensee, free of any censorship by the Commission. 47 U.S.C. § 326; (citations). It is only governmental action which can violate the First and Fourteenth Amendments, as held, for ex-

ample, in The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). To hold that the licensing by the Federal Government of a broadcast frequency endows the recipient with the quality of an agency of the Federal Government would be an unreasonable interpretation of governmental action." *Post*, 323 F.Supp. 803–804.

Other cases to the same effect and which we follow as controlling and right in point are: McIntire v. Wm. Penn Broadcasting Co., 151 F.2d 597 (3rd Cir. 1946) cert. denied 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1945); Massachusetts Universalist Convention v. Hildreth and Rogers Co., 183 F.2d 497 (1st Cir. 1950). So we find as did they that the regulation of CBS by the FCC furnishes no support for any finding that CBS's private activities are "governmental or state action" subject to the prohibitions of the First and Fifth Amendments. As a matter of fact we find exactly to the contrary. CBS carried on all its activities vis-a-vis Smothers Brothers and Comedic as a private party and its actions in that connection were and are not "governmental or state action" of any kind whatsoever.

After reviewing all the pleadings, motions, points and authorities and affidavits, this Court has ordered that the motion for summary judgment be granted. There is no private suit allowable under the Federal Communications Act of 1934, and there is no "governmental or state action" alleged here which would

---

7. The Commission has specifically held "absent substantial extrinsic evidence of motives inconsistent with the public interest, the Commission should not and will not intervene in this continuing program practice." 25 FCC 2d 707 (1970).

8. The most recent of these cases is Business Executives' Move for Vietnam Peace v. FCC, 146 U.S.App.D.C. 181, 450 F.2d 642 (1971), cert. granted 405 U.S. 953, 92 S.Ct. 1174, 31 L.Ed.2d 230 (1972). In this case Judge Skelly Wright held that a flat ban, by the FCC, on paid public issue announcements by broadcast licensees violated the First Amendment. It should be noted that B.E.M. must be distinguished from the instant case

in that (1) B.E.M. sued the FCC itself, a governmental agency, whereas here Plaintiffs sue CBS, a private company. Even Judge Wright recognized this significant distinction on page 642 of B.E.M.; (2) B.E.M.'s main authority is Red Lion Broadcasting Company v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). But *Red Lion* does *not* hold that broadcasters are a public utility or agency of government, contrary to Wright's incorrect interpretation of *Red Lion;* and (3) "state action" is no longer being expanded; to the contrary, in *Moose Lodge* the Supreme Court is clearly contracting the concept.

allow Plaintiffs to sue for deprivation of constitutional rights under the First and Fifth Amendments to the United States Constitution. It follows that "there is no genuine issue as to any material fact" and defendant CBS is entitled "to a judgment as a matter of law." Rule 56(c), F.R.Civ.P.

It is so ordered.